IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA


JOSEPH ASKEW                       :    CIVIL ACTION
                                   :
          v.                       :
                                   :
THE TRUSTEES OF THE GENERAL        :
ASSEMBLY OF THE CHURCH OF THE      :
LORD JESUS CHRIST OF THE           :
APOSTOLIC FAITH, INC., et al.      :    No. 09-15

MEMORANDUM

Dalzell, J.                                  March 11, 2011

          Plaintiff Joseph Askew here asserts various claims

based on allegedly improper dealings in the management of The

Trustees of the General Assembly of the Church of the Lord Jesus

Christ of the Apostolic Faith, Inc. ("Corporation"), a

Pennsylvania non-profit corporation that manages the business of

the General Assembly of the Church of the Lord Jesus Christ of

the Apostolic Faith ("Church"), an unincorporated association.

The church complex is located at 22nd and Bainbridge Streets in

Philadelphia.

          Defendants[1] jointly move under Fed. R. Civ. P. 12(b)(1)

_____

          [1]The defendants are (1) the Corporation, (2) Kenneth
Shelton, the head of the Church and the Corporation's President,
(3) John Carlton Thomas, the Corporation's Chief Administrator,
(4) Johnny Ray Brown, the Corporation's General Counsel and a
trustee, (5)-(7) trustees Anthony Lamb, James Henry Brown, and
Erik Shelton, and (8)-(10) Mary Thomas, Mrs. Johnny Ray Brown,
and Donna Shelton, who the plaintiff describes as a "constructive

to dismiss this case for lack of subject matter jurisdiction.[2]

For the reasons detailed below, we shall grant defendants' motion

and close the case.  Askew has also moved to appoint a receiver.

Because we find below that he does not have standing, we will

deny that motion as moot for lack of jurisdiction.

## I.  **Factual Background**

     This case has a long and winding history that we

recounted in our July 21, 2009 Memorandum, and which we will

revisit briefly here.

     Bishop Sherrod C. Johnson founded the Church in 1919.

Compl. ¶ 22; Def.'s First Joint Motion to Dismiss filed March 30,

2009, Ex. B, Church of the Lord Jesus Christ of Apostolic Faith,

Inc. v Shelton, No. 376 C.D. 2000 (Apr. 10, 2001) at 2.  On

December 10, 1947, Bishop Johnson and other Church elders created

---

trustee[s] by virtue of possession of property both real and
personal that was acquired with misappropriated and stolen
funds."  Compl. ¶¶ 2-14.

    [2]Plaintiff objects to what he deems the "late" filing of
defendants' 12(b)(1) motion to dismiss.  In our September 10,
2010 Order, we modified our September 14, 2009 Order and directed
defendants to answer or otherwise respond to the Complaint by
October 15, 2010.  Defendants filed an Amended Answer on October
15, 2010, and sent the Court a letter indicating that they would
file a 12(b)(1) motion to dismiss by October 25, 2010.  Because a
12(b)(1) motion may be filed at any time, we will consider
defendants' motion.

a Pennsylvania non-profit corporation to conduct business on behalf of the Church and hold its assets.  Compl. ¶ 23(I)[3].

The By-Laws of the Church provide for an annual meeting, called the General Assembly.  Def. Renewed Joint Motion to Dismiss Plaintiff's Complaint Pursuant to Fed. R. Civ. P. 12(b)(1) ("MTD"), Ex. A to Ex. 1, Art. I, Sec. 1.  The General Assembly has two officers, a General Overseer (also called the General Elder, Apostle, or Bishop), and a General Secretary. Id., Art I, Sec. 2.  The General Overseer is elected to a lifetime appointment by the General Assembly.  Compl. ¶ 25(II). The General Overseer nominates the General Secretary for terms of one year, and the General Assembly vote to ratify the choice. MTD, Ex. A to Ex. 1, Art. VII.  The By-Laws of the Church also provide that the Corporation holds title to any assets the Church acquires.  Compl. ¶ 23(II), MTD, Ex. A to Ex. 1, Art. II, Sec. 2. The General Overseer is also the President of the Corporation, and only those the General Overseer authorizes can stand for election as the Corporation's Trustees.  Compl. ¶ 25(II), MTD, Ex. A to Ex. 1, Art. II, Sec. 1.

---

[3]The complaint is misnumbered, repeating ¶¶ 23-25.  To differentiate this duplication, we put a (I) after the first instance of the paragraph and a (II) after the second.

On February 22, 1961, Bishop Johnson died and then-General Secretary S. McDowell Shelton succeeded him. Compl. ¶ 26. Bishop Shelton died on October 13, 1991. Id. ¶ 27. A succession crisis ensued.

Kenneth Shelton, Roddy J. Shelton, and Anthonee Patterson each claimed he had rightful control over the Church and the Corporation. Shelton, No. 376 C.D. 2000, at 4. Roddy Shelton was the General Secretary at the time, and, according to the By-Laws of the Church, should have succeeded Bishop Shelton as interim General Overseer until the next General Assembly. Id. at 5-6, 14-15. But some of the other Trustees disputed Roddy Shelton's succession, and prevented him from taking office. Id. at 6-7. Askew alleges that Kenneth Shelton, through threats and the use of physical force, took de facto control of both the Church and the Corporation. Compl. ¶¶ 19, 29. He avers that Kenneth Shelton and his followers physically removed Askew and others in the Roddy Shelton faction from a Church meeting held on May 23, 1992. Id. ¶ 19. Although he was removed from the property, Askew maintains that he remains a member of the Church to this day. Id.

The continuing dispute over leadership led the factions to hold separate meetings, each styled as a General Assembly, and

4

each electing a different General Overseer.  <u>Shelton</u>, No. 376

C.D. 2000, at 8.  Protracted litigation then ensued.  The

Philadelphia Court of Common Pleas ultimately determined, and the

Commonwealth Court later affirmed, that Kenneth Shelton had been

duly elected the General Overseer at the September 9, 1992

General Assembly.  <u>Id.</u> at 9, 25.

Askew alleges that since taking control of the Church

and Corporation, Kenneth Shelton and the Trustees of the

Corporation have misappropriated funds, wasted assets, paid

themselves salaries and stipends that are contrary to the word

and spirit of the Articles and By-Laws, funded private

expenditures with Corporation assets, and violated state and

federal law.  Compl. ¶¶ 31-38.

In our July 21, 2009 Memorandum and Order, we dismissed

Counts II (Breach of Fiduciary Duty to the Corporation), IV

(Issuance of Financial Statements), and V (Appointment of a

Custodian) of the Complaint because Askew is not a member of the

Corporation and therefore did not have standing to bring

derivative claims on behalf of the Corporation.  We did not

consider Counts VII (Civil Conspiracy) and VIII (Constructive

Trust) because those claims are only viable if plaintiff

establishes one of the other claims.  We denied defendants'

motion to dismiss with respect to the remaining three Counts

because Askew had alleged that he was a member of the Church, and

defendants had presented no evidence to the contrary.

On August 18, 2009, defendants filed a Rule 12(b)(1)

motion to dismiss plaintiff's complaint.  On September 14, 2009,

we ordered the parties to conduct standing-related discovery and

denied defendants' motion to dismiss without prejudice pending

the completion of that discovery.  Defendants elected to file an

interlocutory appeal from that Order.  On June 21, 2010, our

Court of Appeals dismissed the appeal for lack of jurisdiction.

Askew v. Trustees of the General Assembly of the Church of the

Lord Jesus Christ of the Apostolic Faith, No. 09-3695 & 09-3696,

slip. op. at 2 (3d Cir. Jun. 21, 2010).  Upon learning of the

Court of Appeals's Order, we adjusted the discovery schedule and

afforded plaintiff the opportunity to depose the Church's General

Overseer, Kenneth Shelton.  Kenneth Shelton testified that he had

declared many times since 1992 that Askew was not a member of the

Church.  MTD, Ex. 2, Dep. of Kenneth Shelton ("Shelton Dep.") at

63.  Bishop Shelton also confirmed in his Declaration to the

Court that Askew is not a member of the Church.  Id., Ex. 1,

Declaration of Bishop Kenneth Shelton at ¶ 12.

Defendants now move to dismiss the remainder of

plaintiff's Complaint pursuant to Rule 12(b)(1), arguing that because Bishop Shelton is the highest judicatory body of the Church, and because he has declared that Askew is not a member of the Church, Askew does not have standing to bring the remaining claims.

We turn now to address plaintiff's standing.

## II.  Analysis

A court must dismiss a complaint if it lacks subject matter jurisdiction over the claims because without subject matter jurisdiction the court does not have the power to hear the case.  Fed. R. Civ. P. 12(b)(1); Mortensen v. First Fed. Sav. and Loan Ass'n, 549 F.2d 884, 891 (3d Cir. 1977).  Indeed, because subject matter jurisdiction is so central to a court's authority, a court can raise issues of subject matter jurisdiction sua sponte at any time.  Fed. R. Civ. P. 12(h)(3).

Challenges to subject matter jurisdiction may be facial or factual.  Mortensen, 549 F.2d at 891.  The former proceeds like a motion under Rule 12(b)(6), where a court accepts the allegations in the complaint as true.  Id.  In the latter, a court is "free to weigh the evidence and satisfy itself as to the existence of its power to hear the case."  Id.  It is well

settled that standing cannot be "inferred argumentatively from averments in the pleadings," Grace v. Am. Cent. Ins. Co., 109 U.S. 278, 284 (1883), but rather must affirmatively appear in the record. Mansfield, C. & L.M.R. Co. v. Swan, 111 U.S. 379, 382 (1884). Here, we must determine whether there is affirmative evidence in the record that supports plaintiff's standing to sue these defendants. Because defendants present factual evidence of Askew's lack of standing, we will treat this motion accordingly.

As defendants' motion constitutes a factual challenge, the burden shifts to Askew to prove that subject matter jurisdiction exists. We will thus weigh the jurisdictional evidence. In reviewing a factual challenge to a Court's subject matter jurisdiction, the Court is not confined to the allegations in the Complaint. Instead, we may look beyond the Complaint to the evidence presented to determine whether we indeed have such jurisdiction. Gotha v. United States, 115 F.3d 176, 179 (3d Cir. 1997) (noting that "the court [is] not confined to allegations in the plaintiff's complaint, but [can] consider affidavits, depositions, and testimony to resolve factual issues bearing on jurisdiction"); Turicento, S.A. v. American Airlines Inc., 303 F.3d 293, 300 n.4 (3d Cir. 2002).

As we stated in our July 21, 2009 Order, the

plaintiff's burden to show standing is a continuing one.  "Each

element of standing must be supported in the same way as any

other matter on which the plaintiff bears the burden of proof,

i.e. with the manner and degree of evidence required at the

successive stages of litigation."  Doe v. Nat'l Bd. of Med.

Examiners, 199 F.3d 146, 152-53 (3d Cir. 1999) (quoting Lujan v.

Defenders of Wildlife, 504 U.S. 555, 561 (1992)).

        A party must establish the three elements of Article

III standing at an "irreducible constitutional minimum." Lujan,

504 U.S. at 560.  First, the plaintiff must have suffered an

"injury in fact," which is an invasion of a legally protected

interest that is (a) concrete and particularized, and (b) "actual

or imminent," not "conjectural" or "hypothetical."  Id. (quoting

Whitmore v. Arkansas, 495 U.S. 149, 155 (1990)).  Second, there

must be a causal connection between the injury and the conduct

complained of -- that is, the injury must be fairly traceable to

the challenged action of the defendant, and not the result of the

independent action of some third party not before the court.  Id.

"Third, it must be 'likely,' as opposed to merely 'speculative,'

that the injury will be 'redressed by a favorable decision.'"

Id. at 561 (quoting Simon v. E. Ky. Welfare Rights Org., 426 U.S.

26, 38, 43 (1976)).

"The party invoking federal jurisdiction bears the burden of establishing these elements." Id. (citing FW/PBS, Inc. v. Dallas, 493 U.S. 215, 231 (1990); Warth v. Seldin, 422 U.S. 490, 508 (1975)). The elements of standing are essential to the plaintiff's case, and therefore must be proven in accordance with the standards required in each successive stage of the proceeding. Id. Additionally, when seeking injunctive relief the plaintiff's burden is not satisfied by proving the occurrence of prior illegal acts, but must include proof of continuing violations. Id. at 564 (quoting Los Angeles v. Lyons, 461 U.S. 95, 102 (1983)).

Defendants contend that Askew cannot show that he suffered an injury-in-fact because he is not a member of the Church. As we noted in our July 21, 2009 Order, without Church membership Askew would not be part of the beneficiary class for which the Corporation holds its assets in trust, and thus could not suffer injury when the Corporation's assets are misused. Defendants also argue that the First Amendment bars us from questioning the internal process by which Bishop Shelton revoked Askew's membership. MTD at 31. Plaintiff claims that he is a member because he pays tithes and attends a branch of the Church. Pl. Resp. at 5.

### A.   The First Amendment

As we stated in our previous Memorandum, under the
First Amendment civil courts may not entangle themselves in the
internal workings and doctrines of religious organizations.  This
rule was first established in Watson v. Jones, 80 U.S. (13 Wall.)
679 (1871).  Watson held that civil courts are capable of
resolving property disputes involving religious organizations or
bodies within such organizations and "the rights of such bodies
to the use of the property must be determined by the ordinary
principles which govern voluntary associations; if the church had
always governed itself by majority rule, for example, the
majority faction would prevail."  Scotts African Union Methodist
Protestant Church v. Conference of African Union First Colored
Methodist Protestant Church, 98 F.3d 78, 86-87 (3d Cir. 1996)
(quoting Watson, 80 U.S. at 725) (internal quotations omitted)).
But the courts' capacity to adjudicate such disputes has limits:
"whenever the questions of discipline, or of faith, or
ecclesiastical rule, custom, or law have been decided by the
highest of these church judicatories...legal tribunals must
accept such decisions as final, and as binding on them."  Watson,
80 U.S. at 727.

As we noted before, that rule of deference has since

gained explicit First Amendment footing.  See, e.g., Gonzalez v.

Roman Catholic Archbishop, 280 U.S. 1, 16 (1929) ("the decisions

of the proper church tribunals on matters purely ecclesiastical,

although affecting civil rights, are accepted in litigation

before the secular courts as conclusive"); Kedroff v. Saint

Nicholas Cathedral, 344 U.S. 94, 120-21 (1952) ("in those cases

when the property right follows as an incident from decisions of

the church custom or law on ecclesiastical issues, the church

rule controls"); Serbian Eastern Orthodox Diocese for the United

States and Canada v. Milivojevich, 426 U.S. 696, 709 (1976)

("where resolution of the disputes cannot be made without

extensive inquiry by civil courts into religious law and polity,

the First and Fourteenth Amendments mandate that civil courts

shall not disturb the decisions of the highest ecclesiastical

tribunal within a church of hierarchical polity").[4]  In

_____

    [4]This is by no means the only strand in the Supreme Court's
jurisprudence.  Another line of cases establishes what is known
as the "neutral principles" doctrine, i.e., that civil courts may
resolve intrachurch property disputes that are amenable to the
application of neutral principles of law.  Presbyterian Church in
the United States v. Mary Elizabeth Blue Hull Memorial
Presbyterian Church, 393 U.S. 440, 449 (1969).  Since Mary
Elizabeth Blue Hull, the Supreme Court has firmly established
that the First Amendment does not prohibit civil courts from
resolving property disputes to which only neutral principles of

<u>Milivojevich</u>, the Supreme Court held that there was no "dispute

that questions of church discipline and the composition of the

church hierarchy are at the core of ecclesiastic concern."  <u>Id.</u>

at 717.  The Supreme Court also held in <u>Milivojevich</u> that the

Free Exercise Clause "permit[ted] hierarchical religious

organizations to establish their own rules and regulations for

internal discipline and government, and to create tribunals for

adjudicating disputes over these matters ... the Constitution

requires that civil courts accept their decisions as binding upon

them." <u>Id.</u> at 724-25.

The Pennsylvania Supreme Court in <u>The Presbytery of

Beaver-Butler of the United Presbyterian Church in the United

States v. Middlesex Presbyterian Church</u>, 489 A.2d 1317 (Pa.

1985), also accepted that when it came to questions about

doctrine or internal church governance, Pennsylvania courts, like

all American courts, must accept the determinations of the

highest church tribunals as binding fact.  <u>Id.</u> at 1320.

The <u>Watson</u>-<u>Gonzalez</u>-<u>Milivojevich</u> rule applies once the

record establishes that the relevant factual disputes can only be

resolved by doctrinal determinations.  Then, the courts accept

---

law apply.  <u>Jones v. Wolf</u>, 443 U.S. 595, 603 (1979).

the factual determinations of the church and try to resolve the

ultimate questions underlying the <u>legal</u> dispute with neutral

principles of law, if possible.  See, e.g., <u>Poesnecker v.

Ricchio</u>, 631 A.2d 1097 (Pa. Commw. Ct. 1993), <u>cert.</u> <u>denied</u> 514

U.S. 1079 (1995) (applying rules of religious fraternal

organization to determine whether individuals had been duly

elected, and deferring only to actual, valid determinations made

by the organizations' authorities); <u>Shelton</u>, No. 376 C.D. 2000

(determining when particular actions were valid church actions

and accepting those actions as a factual finding).  If the

question at hand is a purely doctrinal one upon which the highest

Church body has already decided, we cannot overturn that

decision.

### B.    Church Membership is an Ecclesiastical Matter

Defendants argue that these First Amendment principles

divest us of power to hear this case.  They present evidence that

Kenneth Shelton is the highest judicatory body in the Church and

that he has ruled that Askew is not a member of the Church.

Plaintiff contends that he is a member of the Church and has been

since he was a child.

As our Brother Judge O'Neill has noted, a dispute over

membership in a church constitutes a core ecclesiastical matter.

Gundlach v. Swain, 1996 WL 24748, at *4 (E.D. Pa. Jan. 24, 1996),

aff'd, 91 F.3d 123 (3d Cir. 1996) ("like any other controversy

over internal ecclesiastical discipline, polity, authority or

governance, a dispute over the propriety of a member's 'expulsion

from a religious society. . . is not a harm for which courts can

grant a remedy'"); Grunwald v. Bornfreund, 696 F. Supp. 838,

840-41 (E.D.N.Y. 1988); see also Dowd v. Society of St.

Columbans, 861 F.2d 761, 764 (1st Cir. 1988); Burgess v. Rock

Creek Baptist Church, 734 F. Supp. 30, 33 (D.D.C. 1990); Nunn v.

Black, 506 F. Supp. 444, 448 (W.D.Va.), aff'd, 661 F.2d 925 (4th

Cir. 1981), cert. denied, 454 U.S. 1146 (1982); Atterberry v.

Smith, 522 A.2d 683, 686 (Pa. Commw. Ct. 1987); Canovaro v.

Brothers of the Order of Hermits of St. Augustine, 191 A. 140,

145 (Pa. 1937).  The Supreme Court of Pennsylvania has also held

that "[c]hurch membership is an ecclesiastical matter, not

temporal.  There is no property right in membership, and there

could be no property rights in lay members except through their

membership in the congregation."  Canovaro, 191 A. at 145.

The Commonwealth Court of Pennsylvania affirmed on

April 10, 2001 that a majority of those present and voting

15

validly elected Kenneth Shelton as the Bishop and General

Overseer of the Church at the General Assembly held in September

of 1992.  Shelton, 376 C.D. 2000, at 25.  Askew does not dispute

this holding.  Instead, he claims that he is a member of a

minority faction of the Church that follows Roddy Shelton and

that "a member of a faction of a church is no less a member than

any other."  Pl. Resp. at 7.

But the By-Laws of the Church specifically provide that

the "General Overseer has the right to remove any. . . member of

The Church from. . . membership without accusation or trial if he

may deem it necessary for the good of the Church of the Lord

Jesus Christ of the Apostolic Faith."  MTD, Ex. A to Ex. 1, Art.

V, Sec. 9.  Kenneth Shelton testified during his deposition on

September 29, 2010 that, "I declared Mr. Askew not to be a member

after it was clear, in his own statement, as I recall, that he

left and affiliated himself with Roddy Nelson, and for the good

of the church, I deemed him not to be a member."  Shelton Dep. at

63.  Kenneth Shelton also testified that he had declared Askew

not to be a member many times after 1992, and that once he

declares someone to be a non-member there is no appeal from that

decision.  Id. at 27-28, 64.

16

Defendants also present evidence in the form of the

deposition of Church member John R. Brown, who testified that

Kenneth Shelton is the General Overseer of the Church and that he

is the highest adjudicatory body of the Church.  Deposition of

John R. Brown ("Brown Dep.") at 81, 94, 98.

Askew presents no evidence to dispute the fact that

Bishop Shelton "deemed it necessary" to revoke Askew's

membership.  And even if he did present such evidence, this is

the very type of inquiry that is beyond the scope of our

jurisdiction given the First Amendment's limitations on us.

Instead, Askew argues that Kenneth Shelton did not declare him to

be a non-member until after Askew filed his Complaint here in

January of 2009.  Pl. Resp. at 7-14.  Askew intimates that the

fact that he was declared a non-member after the start of this

lawsuit is somehow illegal or not worthy of evidentiary weight,

but he fails to cite any caselaw in support of this point.  At

worst, he claims that the August 18, 2009 Declaration of Kenneth

Shelton is "highly suspect" and leaves it at that.  Pl. Resp. at

10.

Askew contends that defendants' evidence of his lack of

membership is inadequate, but here plaintiff confuses the burden

of proof.  Plaintiff's burden is to prove through <u>affirmative</u>

evidence that he <u>is</u> a member of the Church, and in this he fails.

Defendants have presented proof that Kenneth Shelton is the

General Overseer of the Church, that the General Overseer has the

absolute power to declare someone a non-member, and that Kenneth

Shelton has, in fact, declared Askew to be a non-member.

Askew claims that he pays tithes -- although those

tithes go to a church in Glen Burnie, Maryland, not to the one at

22nd and Bainbridge Streets.  Deposition of Joseph Askew ("Askew

Dep.") at 29.  He also asserts that he attends church, but he

admits he has not been back to the Church at 22nd and Bainbridge

Streets since 1992.  <u>Id.</u> at 24.  Instead, he attends different

churches in Glen Burnie and Darby, Pennsylvania.  <u>Id.</u> at 10.  He

also acknowledges that he is loyal to Roddy Nelson Shelton, not

to Kenneth Shelton.  <u>Id.</u> at 23.

To be sure, Askew has testified that he is a member of

the Church.  Askew Dep. at 24.  But Pennsylvania courts have held

that an individual may not confer standing upon himself through

his mere subjective belief that he is a member of a church.  <u>See</u>

<u>Croatian Roman Catholic Congregation v. Wuerl</u>, 668 A.2d 1151,

1152 (Pa. Super. Ct. 1995) (acknowledging the parishioners'

devotion, but noting that "[t]hat devotion. . . can neither

confer upon the civil courts jurisdiction over an ecclesiastical

matter nor cloak appellants in these cases with standing where none exists").  Ultimately, Askew presents no evidence that confirms that he is a member of the Church.  And even if Askew was not declared a non-member until after this suit had been filed, he has not explained why he would continue to have standing in this lawsuit despite that fact.

Because Bishop Shelton has declared Askew not to be a member of the Church, and because we cannot delve into the internal, ecclesiastical decisions of the highest judicatory body of the Church, our inquiry must end here lest we traipse beyond where the First Amendment allows us to go.  Askew is not a member of the Church and therefore does not have standing to pursue his claims.

## III. Conclusion

Askew having failed to present evidence that confirms his standing in this matter, he does not have standing to pursue his claims in this Court.  We will therefore grant defendants' motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(1).  Because Askew does not have standing, we will also deny as moot his motion for the appointment of a receiver.

BY THE COURT:

19

___\s\Stewart Dalzell